GEORGE VALASHINAS, Respondent, v. STANLEY KONIUTO, Appellant.

Argued October 12, 1954; decided December 31, 1954.

*George L. Hinman* for appellant. I. When plaintiff included in his acceptance of December 15th the requirement that the sale should be closed " no later than December 31, 1952," plaintiff

was imposing a condition upon his acceptance of defendant's offer, and, in effect, making a counteroffer which, in law, constituted a rejection of defendant's offer. (*Wittwer* v. *Hurwitz,* 216 N. Y. 259; *Berk & Co.* v. *Derecktor,* 301 N. Y. 110; *Barber-Greene Co.* v. *Dollard,* 239 App. Div. 655; *Clark* v. *Dales,* 20 Barb. 42; *Baker* v. *Packard,* 112 App. Div. 543; *Winslow* v. *Moore,* 30 Hun 311, 17 N. Y. Week. Dig. 429; *American Woolen Co.* v. *Moskowitz,* 159 App. Div. 382; *Crossett* v. *Carleton,* 23 App. Div. 366; *Brown* v. *Norton,* 50 Hun 248.) II. It is fundamental that the validity of a contract must be determined at its inception. If an acceptance is not valid at the time it is made, subsequent events cannot make it so. If the acceptance is bad, it kills the offer. The offer cannot thereafter be accepted by a subsequent acceptance. (*Minneapolis & St. Louis Ry. Co.* v. *Columbus Rolling Mill,* 119 U. S. 149; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Machinery Utilities Co.* v. *Fry,* 224 App. Div. 392; *Howells* v. *Stroock,* 50 App. Div. 344.) III. The decision below works a substantial injustice and, if not reversed, will stand as an unsettling precedent in the field of commercial relationships. (*St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.,* 235 N. Y. 30; *Sun Print. & Pub. Assn.* v. *Remington Paper & Power Co.,* 235 N. Y. 338; *Mayer* v. *McCreery,* 119 N. Y. 434.)

*A. E. Gold* for respondent. I. The partnership agreement expressly provided that the sale of plaintiff's interest was to take place when he made his election to sell which necessarily fixed the time of closing. (*Hakes* v. *Peck,* 1 Keyes 505; *Merchants & Traders' Nat. Bank* v. *Mayor of City of N. Y.,* 97 N. Y. 355; *Davies* v. *Miller,* 130 U. S. 284; *Sanborn* v. *Fireman's Ins. Co.,* 16 Gray [Mass.] 448; *Buffum* v. *Buffum,* 11 N. H. 451; *Matter of Improvement Cliff Ave.,* 122 Wash. 335; *Bettersby* v. *Shepeard,* 89 Col. App. 756; *Leader* v. *Telesphore Plante,* 35 Me. 339; *Mattieson* v. *Marks,* 9 Mich. 423; *Adams* v. *Ingalls,* 30 Wn. 2d 282.) II. The Appellate Division correctly decided that the parties made a complete and binding contract without reference to the partnership agreement. (*Ballen* v. *Potter,* 251 N. Y. 224; *Baker* v. *Packard,* 112 App. Div. 543, 189 N. Y. 524; *American Woolen Co.* v. *Moskowitz,* 159 App. Div. 382; *Crossett* v. *Carleton,* 23 App. Div. 366; *Brown* v. *Norton,* 50 Hun 248; *Clark* v. *Dale,* 50 Barb. 42; *Winslow* v. *Moore,* 30 Hun 311, 17 N. Y. Week.

Dig. 429; *Gibbs* v. *Gibbs,* 152 Ga. 614; *Long* v. *Needham,* 37 Mont. 408; *Horgan* v. *Russell,* 24 N. D. 490; *Turner* v. *McCormack,* 56 W. Va. 161; *Matteson* v. *Scofield,* 27 Wisc. 671).

DESMOND, J.   A business partnership agreement, between plaintiff and defendant, made this arrangement as to dissolution: "If either party to this agreement shall at any time desire to dissolve such partnership, he shall give notice in writing to the other party hereto of his intention, stating in said notice the sum of money which he is willing to give for the other party's undivided interest in said business and that he is willing to accept the same sum for his undivided interest in said business if the other party so elects.   The party receiving such notice shall within ninety days from the date thereof either sell his interest or purchase the interest of the other party at the sum specified in said notice, and shall notify the party giving such notice of his intention to buy such party's interest or to sell his own, according to the aforesaid option.   In case of the failure of the party to whom said notice is given to make his election in writing within ninety days after the service of such notice, then the party giving such notice may elect whether he will sell his interest or purchase that of the partner upon the terms contained in said notice or option given by him.   When a determination has been made as above provided the party selling shall convey his interest to the party purchasing upon the payment of said purchase price, and shall thereupon retire from the partnership."

On December 12, 1952, defendant gave to plaintiff a written notice in these words:

"Subject: Dissolving of Partnership

To: Mr. George Valashinas

In accordance with partnership agreement dated October 1, 1946, prepared by Chernin & Gold, Attorneys at Law, I am submitting to you a written notice of intent to dissolve our existing partnership for a cash settlement of $200,000.00, plus ½ of the value of accounts receivable at the time of sale and ½ of all cash owned by the company on the date of sale.

Also in accordance with our partnership agreement, you must notify me within ninety days (90 days) from the above date of your intent.

STANLEY J. KONIUTO s/ "

Plaintiff replied with this letter:

" Dear Stanley:

In accordance with your Notice of December 12, 1952, wherein you refer to the terms of our partnership agreement of October 1st, 1946, I hereby elect to accept your offer to purchase my interest in our partnership business formerly purchased by us from the Star Instruments, Inc., in accordance with the terms of such letter, to wit: ' a cash settlement of $200,000.00, plus ½ of the value of accounts receivable at the time of sale and ½ of all cash owned by the company on the date of sale.'

I will be ready, willing and able to give you a complete Bill of Sale and a sufficient conveyance to you of my interest in the real estate as may be required to effectuate such sale, as of December 31st, 1952, or sooner if you so choose. Such instruments will be delivered to you properly executed by me on such date fixed by you, no later than December 31st, 1952 at the offices of attorneys, Chernin & Gold, of 300 Press Bldg., Binghamton, N. Y., upon payment by you in accordance with the terms of your offer in your letter of December 12, 1952.

Very truly yours,<br>GEORGE VALASHINAS."

The next in this series of communications was another letter, sent December 22, 1952, from plaintiff to defendant, thus:

" Dear Stanley:

Please refer to my letter of December 15, in reply to your notice of December 12.

I am informed that the legal documents to effectuate the sale of my interest in the partnership, in accordance with your notice and my letter of acceptance, are now being prepared and will be ready in a few days.

Therefore, if you want to close this week we can do so or, if you prefer, we can wait until December 31, the date suggested in my letter. If I do not hear from you, I will assume that it is your intention to close on December 31st or within a reasonable time thereafter; at any rate, please let me know."

Answering that, defendant, on December 27, 1952, wrote this to plaintiff:

" Dear George:

I am unable to purchase your interest in the business by December 31, 1952, in accordance with the proposal contained in your letters of December 15, 1952 and December 22, 1952. I, therefore, reject the same.

I also withdraw and cancel my letter to you dated December 12, 1952."

Two days later, plaintiff sent defendant a letter, refusing to accede to defendant's attempted withdrawal of the latter's original (December 12, 1952) offer, and demanding that, " on December 31, 1952, or within a reasonable time thereafter ", defendant sell his interest, on the terms he himself had offered. But defendant would not perform, and plaintiff brought this suit for specific performance. A motion by defendant for judgment dismissing the complaint as insufficient (Rules Civ. Prac., rule 106) was denied by Special Term, and, after the Appellate Division had unanimously affirmed that denial, the latter court, with certification of an appropriate question, granted defendant leave to appeal to this court.

Defendant's main reliance is on his theory that, by setting a closing date (December 31, 1952) in his accepting letter (*supra*) of December 15, 1952, plaintiff, so defendant claims, introduced a new term and so made a new offer, or counteroffer, instead of accepting or rejecting the proposal, as made. We see no substance to that. Defendant's " buy or sell " proposal said nothing about a closing date. The partnership agreement gave to plaintiff, as recipient of the original " buy or sell " notice, ninety days in which to make his choice and to close the transaction. But the ninety-day period allowed by the partnership pact to one in plaintiff's position, in which to make his choice and carry it out, left for arrangement the fixation of a specific closing date, if plaintiff should (as he did) announce his choice well before the end of ninety days. When, on December 12th, defendant gave notice that he would buy or sell, at plaintiff's choice, for $200,000, he (defendant) thereby gave notice that he himself was ready either to purchase plaintiff's share or to convey his own. Three days later, plaintiff announced that he chose to sell and that he would be ready, on December 31st, to deliver the title papers and receive the money. That was not a counteroffer, modification or anything of the sort, but a positive,

unambiguous expression of complete willingness to perform.
Someone had to fix, or suggest, a closing date, since the partner-
ship agreement did not do so. And, as both courts correctly
held (surely not without reason), plaintiff's notice that he would
be ready, on December 31st, to close the transaction, was no more
than a suggestion, request or overture (a case directly in point
is *Winslow* v. *Moore* [30 Hun 311; see 17 N. Y. Week. Dig.
429, 430]). To turn that request into a new " express condition "
or a peremptory insistence on making " time of the essence "
is to exaggerate a simple, routine business detail into something
never intended (see *Winslow* v. *Moore, supra*). Probably (we
need not decide this) respondent was privileged to name a date
to be " of the essence " (see *Taylor* v. *Goelet,* 208 N. Y. 253, 259),
so long as the time so allowed was not unreasonable (*Taylor* v.
*Goelet, supra;* see *Murray Co.* v. *Lidgerwood Mfg. Co.,* 241 N. Y.
455; *Trainor Co.* v. *Amsinck & Co.,* 236 N. Y. 392, 394). But, in
fact, respondent did no more than recommend a closing date.
If there could, otherwise, be any doubt about that, the doubt was
removed by plaintiff's voluntary statement in his next (December
22d) letter at a time when defendant's original offer was still
open, that plaintiff would close the transaction on December 31st,
or earlier, or " within a reasonable time " after December 31st.
To all of that, defendant said only that he would not close at all.
He did not say that December 31st was inappropriate or incon-
venient, nor did he ask for a later date. He simply tried to
withdraw from the position to which he had, by his own choice,
irrevocably committed himself in his letter of December 12th.
Plaintiff, as was his right, refused to agree to such a withdrawal.
It follows that, as both courts below unanimously held, plaintiff's
complaint, seeking specific performance, states a cause of action.

Little attention need be paid to defendant's assertion that
plaintiff's first answering letter (December 15th) attempted still
another modification, or new term, when it proposed the delivery
by plaintiff of " a sufficient conveyance " of plaintiff's interest
in the partnership's real property. All that meant was that
plaintiff would be prepared, in routine fashion, to do what
the sale of such a partnership interest necessarily involved,
that is, give a " sufficient " deed of the realty.

If it were necessary to make so close an analysis, we would
say that defendant's first letter and plaintiff's reply were not,

in the conventional sense of contract making, an " offer " and " acceptance " at all. They were, instead, mere steps in the performance of the partnership contract, an exercise by each party, in turn, of an option provided for by that contract. However, the result is the same either way, since defendant had the right to tender the alternatives to plaintiff; thus plaintiff had the right to, and did, choose the sole alternative, and the right to suggest that the closing be on a particular date, " or within a reasonable time thereafter ". But defendant, without legal cause, refused to buy.

The order should be affirmed, with costs, and the question certified answered in the affirmative.

CONWAY, J. (dissenting). This is an appeal by defendant by permission of the Appellate Division, Third Department, from an order which unanimously affirmed an order of Special Term, Supreme Court, Broome County, denying defendant's motion pursuant to rule 106 of the Rules of Civil Practice for a dismissal of plaintiff's complaint. The Appellate Division certified the following question: "Does the complaint of plaintiff-respondent state facts sufficient to constitute a cause of action? "

Plaintiff sued for specific performance of a written contract alleged to have been entered into by the parties whereby the defendant would purchase the plaintiff's interest in a partnership in which both the plaintiff and defendant were the sole partners. The alleged agreement was made in connection with the dissolution of the partnership.

The material facts alleged in the complaint and deemed true for the purpose of this appeal are as follows:

On October 1, 1946, the plaintiff and defendant entered into a written partnership agreement, the most relevant portion of which states: " If either party to this agreement shall at any time desire to dissolve such partnership, he shall give notice in writing to the other party hereto of his intention, stating in said notice the sum of money which he is willing to give for the other party's undivided interest in said business and that he is willing to accept the same sum for his undivided interest in said business if the other party so elects. The party receiving such notice shall *within ninety days* from the date thereof *either sell* his interest or purchase the interest of the other party

at the sum specified in said notice, *and shall notify* the party giving such notice of his intention to buy such party's interest or to sell his own, according to the aforesaid option. In case of the failure of the party to whom said notice is given to make his election in writing within ninety days after the service of such notice, then the party giving such notice may elect whether he will sell his interest or purchase that of the partner upon the terms contained in said notice or option given by him. When a determination has been made as above provided the party selling shall convey his interest to the party purchasing upon the payment of said purchase price, and shall thereupon retire from the partnership.'' (Emphasis supplied.)

That gave the partner receiving the notice ninety days in which to sell or purchase the interest of the partner giving the notice. The one giving the notice had no choice himself to buy or sell unless the one notified failed to respond to the notice for ninety days.

When a determination had been made as to who was to purchase and who to sell, then the '' party selling '' was to convey his interest to the '' party purchasing upon the payment of said purchase price '' and for such '' conveying '' no period of time was prescribed in the agreement.

Following the making of the agreement, and pursuant to its terms, the parties conducted the business as copartners.

On December 12, 1952, the defendant gave the plaintiff the following notice in writing in accordance with paragraph 8 of the agreement:

'' December 12, 1952

Subject: Dissolving of Partnership
To: Mr. George Valashinas

In accordance with partnership agreement dated October 1, 1946, prepared by Chernin & Gold, Attorneys at Law, I am submitting to you a written notice of intent to dissolve our existing partnership for a cash settlement of $200,000.00, plus ½ of the value of accounts receivable at the time of sale and ½ of all cash owned by the company on the date of sale.

Also in accordance with our partnership agreement, you must notify me within ninety days (90 days) from the above date of your intent.

STANLEY J. KONIUTO s/ ''

On December 15, 1952, the plaintiff gave the defendant the following written notice of his alleged election and acceptance of the defendant's offer set forth above:

" Dear Stanley:

In accordance with your Notice of December 12, 1952, wherein you refer to the terms of our partnership agreement of October 1st, 1946, I hereby elect to accept your offer to purchase my interest in our partnership business formerly purchased by us from the Star Instruments, Inc., in accordance with the terms of such letter, to wit: ' a cash settlement of $200,000.00, plus ½ of the value of accounts receivable at the time of sale and ½ of all cash owned by the company on the date of sale.'

I will be ready, willing and able to give you a complete Bill of Sale and a sufficient conveyance to you of my interest in the real estate as may be required to effectuate such sale, as of December 31st, 1952, or sooner if you so choose. Such instruments will be delivered to you properly executed by me on such date fixed by you, no later than December 31st, 1952 at the offices of attorneys, Chernin & Gold, of 300 Press Bldg., Binghamton, N. Y., upon payment by you in accordance with the terms of your offer in your letter of December 12, 1952.

Very truly yours,<br>GEORGE VALASHINAS."

These letters of December 12, 1952, and December 15, 1952, are controlling on the issue of plaintiff's alleged acceptance of defendant's offer. There either was or was not an acceptance at that time.

Therefore, stopping there for a moment, we find a seeming acceptance of defendant's offer in the first paragraph of plaintiff's letter of December 15th. When we come to the second paragraph, however, we find the introduction of at least three new terms not mentioned in the offer.

The offer was for cash alone for purchase or sale of a partnership interest. In the second paragraph of the claimed acceptance, there is the introduction of a new offer of " a *sufficient conveyance* to you of my interest in the real estate as may be required *to effectuate such sale* * * *."* (Emphasis supplied.) What is a sufficient conveyance of real estate — a full

covenant and warranty deed, a bargain and sale deed or a quit-claim deed? It could be argued technically that any of these would " effectuate such sale ", and yet a purchaser demanding a full covenant and warranty deed might well find himself in a lawsuit. Nothing was said about that in the offer since it would not have been appropriate or proper under the terms of the partnership agreement.

Then there is a second new term provided for by the offeree. The closing must be " as of December 31st, 1952 " or sooner, but it must be on a date " no later than December 31st, 1952 ". That gave the offeror sixteen days to have ready $200,000 in cash and to determine what was one half of the value of the accounts receivable. It did more than that. It made time of the essence as we shall see from the authorities. Having fixed a date, which was not provided for in the partnership agreement, it invited the offeror to involve himself, potentially, in a lawsuit if he could not close on that date.

Further, there was a third new term not provided for in the offer of the offeror. That was that the instruments " properly executed " by the offeree were to be delivered *at the offices of the attorneys of the offeree*. The offices of those attorneys were located at Binghamton, New York. Star Instruments Company, the partnership, in 1952 had its office at Chenango Bridge, New York, and from that address the letter of offer was sent. The letter alleged to constitute an acceptance was written by plaintiff from 45 Dickinson Avenue, Port Dickinson, New York. Neither the partnership agreement nor the offer of the offeror provided that the papers were to be delivered at the place designated by the offeree in his alleged acceptance.

Consequently we have the offeree, after nominally accepting the offer in the first paragraph of his letter of December 15th, then proceeding to add new terms to the offer in that he would give a bill of sale and a " sufficient conveyance " of his interest in the real estate and that such instruments " properly executed " would be delivered " no later than December 31st, 1952 " at the offices of his attorneys in " Binghamton, N. Y." Any one of these additional terms might well be an invitation to a lawsuit.

It has always been a rule of acceptance that one must accept the offer as made. In *Nundy* v. *Matthews* (34 Hun 74) the rule is well stated at pages 77–78 as follows: " The law upon this

subject is simple and elementary. In 1 Parsons on Contract (6 ed., 176–178) the rule is stated thus: ' But there are cases where the answer either in words or in effect departs from the proposition, or varies the terms of the offer or substitutes, for the contract tendered one more satisfactory to the respondent.' In these cases there is no assent and no contract. The respondent is at liberty to accept wholly or to reject, but one of these things he must do; for if he answers not rejecting, *but proposing to accept under some modification this is a rejection of the offer.* All the cases adopt this view. (*Hutchison* v. *Bowker,* 5 M. & W., 535; *Vassar* v. *Camp,* 11 N. Y., 441; *The Chicago and G. E. R. R. Co.* v. *Dane,* 43 *id.,* 240; 32 Am. Rep., 35–51.) *Winslow* v. *Moore et al.* [30 Hun. 311], decided at the June Term, 1883, by this court, where SMITH, P. J., speaking upon this subject says: ' Doubtless an acceptance in order to bind a party making an offer must be an unconditional and unqualified acceptance of all the material terms of the offer.' It follows, therefore, upon this branch of the case, that the defendant did not accept the plaintiff's offer, but on the contrary rejected it. It is a familiar rule that there is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense. The obligation must be mutual. The minds of the parties must meet.'' (Emphasis in original.)

Corbin on Contracts, at section 715, has this to say about making time of performance of the essence: '' Time may be made of the essence by an express provision to that effect; there is no limit in this respect upon our freedom of contract, as long as no part performance has taken place. If the enforcement of such an express provision will have the effect of enforcing an excessive penalty or an unjust forfeiture, equity will prevent such enforcement; this is one limit upon our power to determine our own contractual rights and duties. But the vendor can make his duty to convey expressly conditional upon a payment *on or before a specific day or hour;* and the purchaser can make his duty to pay expressly conditional upon conveyance, *by a specified time.* Such a result is not achieved by merely promising to pay or to convey on a stated day; *either party can achieve it by making his own promise expressly conditional upon such an exact performance by the other.*'' (Emphasis mine.)

I shall now quote from Williston on Contracts (rev. ed., 1936, Vol. 1, § 72): '' An acceptance must be positive and unambiguous. This requirement is often treated as identical with the requirement dealt with in the following sections that an acceptance must not change, add to, or qualify the terms of the offer; and such changes or qualifications undoubtedly prevent an acceptance from being positive and unequivocal. But even though no change in the offer is suggested in the reply of the offeree, it nevertheless may not so clearly indicate assent to the offer as to create a contract.'' In the same volume of Williston, section 77 reads in part as follows: '' A conditional acceptance is in effect a statement that the offeree is willing to enter into a bargain *differing* in some respect from that proposed in the original offer. The conditional acceptance is, therefore, itself a counter-offer and rejects the original offer, so that thereafter even an unqualified acceptance of that offer will not form a contract.'' (Emphasis mine.) Williston also states in section 847 (p. 2376, n. 5): '' The correctness of decisions which extend the time, where the contract in express language fixes a final limit by such words as ' before ' or ' not later than ' may be questioned. Such cases should be distinguished from those where the promise is merely to perform on a stated day, since *an intent is indicated to make it essential that performance shall take place before the final day named.*'' (Emphasis supplied.) Numerous cases are cited by the above authorities. Suffice it to quote briefly from our own decision in *Poel* v. *Brunswick-Balke-Collender Co.* (216 N. Y. 310, 319): '' There was no middle course. If it did not accept the offer proposed it necessarily rejected it. A proposal to accept the offer if modified or an acceptance subject to other terms and conditions was equivalent to an absolute rejection of the offer made by the plaintiffs. [Cases cited.] ''

As a result of this counteroffer of the plaintiff, the defendant made no reply, treating it as a rejection.

One week later, on December 22d, the plaintiff offeree mailed the following letter to the defendant offeror:

'' Dear Stanley:

Please refer to my letter of December 15, in reply to your notice of December 12.

I am informed that the legal documents to effectuate the sale of my interest in the partnership, in accordance with your notice and my letter of acceptance, are now being prepared and will be ready in a few days.

Therefore, if you want to close this week we can do so or, if you prefer, we can wait until *December 31, the date suggested in my letter*. If I do not hear from you, I will assume that it is your intention to close on *December 31st or within a reasonable time thereafter;* at any rate, please let me know." (Emphasis supplied.)

Evidently the plaintiff offeree realized that he had erred in making December 31st of the essence of the proposed agreement for he now added " or within a reasonable time thereafter ".

The defendant then sent this letter on December 27, 1952:

" Dear George:

I am unable to purchase your interest in the business by December 31, 1952, in accordance with the *proposal contained in your letters of December 15, 1952 and December 22, 1952.* I, therefore, reject the same.

I also withdraw and cancel my letter to you dated December 12, 1952." (Emphasis supplied.)

On December 29th, the plaintiff sent the defendant a letter in reply as follows:

" Dear Stanley:

I wish to acknowledge receipt of your letter of December 27, 1952.

I regret that I cannot agree to your request to withdraw *your offer* of December 12th, 1952 which I accepted by my letter of December 15th, 1952.

I therefore expect you to perform in accordance with the terms of *your offer and my acceptance on December 31, 1952 or within a reasonable time thereafter."* (Emphasis supplied.)

In the world of business where the formation of a contract through offer and acceptance may entail great liability, the courts have been most careful in withholding a decision that a contract has been entered into between an offeror and an offeree unless the offer is accepted in the form and content in which it is made. This is one field in the law where logic and precision obtain for the reason already stated, that the liability of one

entering into a contract may be very great indeed. In this case there was involved a cash item alone of $200,000 and the one making the offer under paragraph 8 of the partnership agreement had to be ready either (1) to pay out that amount in cash, or (2) to accept such an amount. In this case it was said below: '' Plaintiff's acceptance letter, though couched in *somewhat peremptory words,* was an *overture,* which was *amplified* by his letter of December 22d. \* \* \* If it had been in defendant's mind that the fixing of the date for mutual performance remained for negotiation between the parties, plaintiff's original fixing of a date and his subsequent suggestions in no way operated as a rejection of the offer but opened the way for fixing the time of performance by both parties.'' (Emphasis supplied.) In my judgment we cannot say, particularly in a business transaction such as this, that an offer may be accepted by an overture which may be amplified one week later.

The majority opinion of this court relies on *Winslow* v. *Moore* (30 Hun 311, digest in 17 N. Y. Week. Dig. 429, 430) in holding that the language employed by plaintiff in his letter of December 15th fixing the closing date of the transaction '' no later than December 31st, 1952 '' was '' no more than a suggestion, request or overture.'' In that case the words used were '' I will be prepared to accept the transfer and pay the money, etc., at W. & J. D. Kernan's office, on Friday, December 31, 1880, at 2 P.M.'' General Term held that such a naming of time and place of performance was not a condition but a '' mere suggestion for the convenience of all parties.'' General Term further found that the defendants had waived any objection on the ground that the acceptance suggested a time and place of performance. The words used in the *Winslow* case (*supra*), unlike the language used here, did not make time of the essence and the court properly held that it was not a condition but a '' mere suggestion for the convenience of all parties.'' Here the plaintiff unequivocally stated that the transaction must close '' no later than December 31st, 1952 '' and thus attached a condition to the acceptance making time of the essence which amounted to a counteroffer and hence a rejection. In fact the *Winslow* case was cited and explained in the case of *Nundy* v. *Matthews* (34 Hun 74, *supra*) as authority for the proposition that where the offeree proposes to accept an offer with some modifications, he thereby rejects the

offer, and the acceptance in order to be binding must be an unconditional and unqualified acceptance of all the material terms of the offer.

Accordingly, the order of the Appellate Division and that of Special Term should be reversed, the question certified answered in the negative and the complaint dismissed, with costs in all courts.

DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in an opinion in which LEWIS, Ch. J., concurs.

Order affirmed, etc.