Frank J. Kronenberg, J.
Plaintiff herein has moved this court pursuant to CPLR 3212 for summary judgment upon the ground that there are no triable issues of fact and that there are no defenses to the cause of action asserted in the complaint herein and that, consequently, plaintiff is entitled to judgment herein as a matter of law.
Defendant has countered with its motion for summary judgment on the ground that there are no defenses to the cause of action asserted in its counterclaim herein.
Plaintiff seeks judgment in the sum of $10,000, together with costs and disbursements, and defendant seeks judgment in the sum of $74,000, together with costs and disbursements.
Jack E. Gellman, president of Parkway Inn, Inc., a New York corporation, which operates a motor hotel in the City of Niagara Falls, New York, made an application for a mortgage loan with the First Federal Savings and Loan Association of Rochester, New York, defendant herein. Said application was in writing upon a form supplied by the defendant and the same was submitted as an exhibit in this matter (Exhibit “ A ”),
*212 A deposit of $10,000 was made with said application and as stated in said loan application, “ the $10,000.00 fee on application will be refunded if the loan is not approved as requested.”
The loan was to be in the principal amount of $2,100,000 and according to the “ Application for Mortgage Loan ”, above mentioned, the “ loan will be secured by a first lien upon real property located at 401 Buffalo Avenue, Niagara Falls, Niagara, New York.”
On March 8,1965, the defendant wrote the plaintiff a four-page letter, the same being submitted to the court as Exhibit “ B ”. In said letter of March 8,1965, the defendant, hereafter referred to as “ First Federal ”, began by stating: “ Our Executve Committee has approved your application for a mortgage loan on the fee title to the above premises consisting of a parcel of land of approximately 530' x 317' improved with a 203 room motor inn, restaurant, cocktail lounge, dining room, public rooms, administrative offices, and a parking area of approximately 120' x 320' in accordance with the plot plans and survey and detailed architect’s plans and specifications prepared by Bussell Groodwin Larke and Cannon, Thiele, Bitz and Connor, heretofore submitted to us, containing the following terms and subject to the conditions thereafter set forth:”
The second paragraph states the amount and terms of the mortgage.
The third paragraph is entitled as follows: “ conditions of THIS COMMITMENT ”.
Said conditions, among other things, include the following:
(1) A first lien on the real property together with easements and licenses.
(2) A chattel mortgage on all personal property as collateral, and personal property lien instruments.
(3) All other instruments that the defendant may request must be satisfactory to the defendant association as well as their counsel, in their sole and absolute discretion.
(4) Title insurance policy in such amount as may be satisfactory to the defendant association in their sole and absolute discretion.
(5) Policy of hazard insurance as defendant may request issued by companies satisfactory to the defendant, in addition to a fire insurance policy including extended coverage and vandalism and malicious mischief coverage, boiler and public liability insurance, rental and business interruption insurance, each having at least one year unexpired term, containing terms, provisions and conditions, satisfactory to the defendant and their counsel as to form and substance and amount.
*213 (6) An indemnification for all claims of persons for fees, commissions, costs or expenses, in addition to the regular recording fees.
(7) The mortgage loan commitment also further conditions that it was to be null and void and of no effect unless accepted in writing by March 15, 1965, by the borrower signing the enclosed copy of the letter.
(8) The loan was also conditioned on receipt of $11,000 to be considered ‘ a partial payment of the mortgage origination and loan commitment fee ”, an acknowledgment that upon payment of this additional sum, the fee is considered earned by the association and under no circumstances will a refund be made. It was further conditioned that the additional $63,000 would be paid at the time of closing representing the balance of origination and commitment fee. It also obligates the borrower to pay the costs and expenses whether the loan is completed or not.
The following language is recited on the final page of Exhibit “B”:
“ This commitment and your written acceptance thereof as superseded by the closing instruments and documents mentioned in the third paragraph hereof and the terms and conditions therein provided shall constitute the entire agreement for a loan and loan commitment and shall survive the closing. No variant or other representation, written or oral, or prior agreement by us, shall be in any manner binding or of any force or effect upon the lender.
“Please contact our attorneys, Robinson, Williams, Brown, Robinson and Angeloff, 32 Main Street East, Rochester, New York. Upon their receipt of the proper instruments they will be pleased to cooperate with you in expediting the closing of this loan.
“We appreciate the opportunity of serving you.
“ Very truly yours,
“ s/William E. Scheu
“ Executive Vice President
“ ABC :jms
“ The foregoing terms as outlined are acceptable and we hereby authorize you to instruct your attorneys to proceed with the legal procedures necessary and appropriate to consummate the loan, including without limitation, evaluation of title and preparation of instruments and documents, at our expense.
............................................19....
*214 It is admitted that the plaintiff did not sign the ‘ ‘ Commitment Letter ” submitted by First Federal on March 8, 1965, and the loan was never made and the matter never consummated.
Plaintiff then sued for the return of its $10,000 and First Federal countered with its demand for an additional $74,000 and, subsequently, both parties sought summary judgment, bringing them before this court.
We are now confronted with the question of whether or not there was a proper “ offer ” and “ acceptance ” to constitute a binding contract between the parties hereto.
Valashinas v. Koniuto (283 App. Div. 13, affd. 308 N. Y. 233) is relied upon by the defendant as the authority upon which summary judgment may be granted on defendant’s counterclaim.
First Federal points out that ‘ ‘ If the acceptance of an offer is initially unconditional, the fact that it is accompanied with a direction or a request looking to the carrying out of its provisions, but which does not limit or restrict the contract, does not render it ineffectual or give it the character of a counteroffer.”
This court believes that ValasMnas v. Koniuto (supra) is controlling in the matter before the court, since in this court’s opinion it serves to distinguish between what is an “ initially unconditional acceptance ’ ’, coupled with a direction or request looking to the carrying out of its provisions, and an acceptance that is conditional and in effect amounts to a counteroffer which, in law, would constitute a rejection of the original offer.
In the Valashinas ease (supra) the parties were partners and entered into a ‘ ‘ buy and sell ’ ’ agreement. Pursuant to said agreement, defendant gave written notice to the plaintiff of his intention to dissolve the partnership and stated the price that he would pay in accordance with the agreement. Three days later plaintiff replied in writing that he elected to accept defendant’s “ offer ”, and that plaintiff would sell his interest for the stated price. Plaintiff also stated that he would be ready to give a “ sufficient conveyance ” of his interest in the realty on December 31, 1952, or “ sooner if you choose ”. On December 27, 1952, defendant wrote plaintiff that he was unable to purchase plaintiff’s interest by December 31,1952, and that his prior letter was withdrawn. Plaintiff sought specific performance and the defendant’s motion for judgment dismissing the complaint was denied. The defendant contended that when plaintiff included in his acceptance the requirement that the sale should be closed “ no later than December 31, 1952”, plaintiff was imposing a condition upon his acceptance of defendant’s offer *215 and, in effect, making a counteroffer which, in law, constituted a rejection of defendant’s offer.
Judge Desmond pointed out (308 N. Y. 233, 338-339) in the majority decision that: 44 That was not a counteroffer, modification or anything of the sort, but a positive unambiguous expression of complete willingness to perform. Someone had to fix, or suggest, a closing date, since the partnership agreement did not do so. * * * Plaintiff’s notice that he would be ready, on December 31st, to close the transaction, was no more than a suggestion, request or overture * * To turn that request into a new express condition ’ or a peremptory insistanee on making time of the essence ’ is to exaggerate a simple, routine business detail into something never intended ”.
Is it not now obvious that in order to keep from making a counteroffer or seeking to modify the offeror’s proposal, the offeree must not introduce new matter other than a2 suggestion, request or overture ”, as defined in the Valashinas case (supra) ?
Even this was going too far in the opinion of Judge Conway, who was joined in the dissent by Chief Judge Lewis, in Valashinas v. Koniuto (supra). Judge Conway stated (p. 243): 44 Consequently we have the offeree, after nominally accepting the offer in the first paragraph * * then proceeding to add new terms to the offer in that he would give a bill of sale and a 4 sufficient conveyance ’ of his interest in the real estate and that such instruments 4 properly executed ’ would be delivered 4 no later than December 31st, 1952 ’ at the offices of his attorneys in 4 Binghamton, N. Y. ’. Any one of these additional terms might well be an invitation to a lawsuit.”
Judge Conway continues (pp. 243-244): 44 It has always been a rule of acceptance that one must accept the offer as made. In Nundy v. Matthews (34 Hun 74) the rule is well stated * * * •.
' The law upon this subject is simple and elementary. In 1. Parsons on Contract (6 ed., 176-178) the rule is stated thus: 4 But there are cases where the answer either in words or in effect departs from the proposition, or varies the terms of the offer or substitutes, for the contract tendered one more satisfactory to the respondent. ’ In these cases there is no assent and no contract.”
Judge Conway continues (p. 244), citing Winslow v. Moore (30 Hun 311): 4 4 4 Doubtless an acceptance in order to bind a party making an offer must be an unconditional and unqualified acceptance of all the material terms of the offer.’ It follows, therefore, upon this branch of the case, that the defendant did not accept the plaintiff’s offer, but on the contrary rejected it. *216 It is a familiar rule that there is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense. The obligation must be mutual. The minds of the parties must meet.”
This court is of the opinion that the case before it does not fall within the requirements as set forth in Valashinas v. Koniuto (supra) and, further, that the dissent in said case would most certainly apply to the facts of the case before this court. (See Arnold v. Gramercy Co., 30 Misc 2d 852.)
Therefore, the court finds that the transaction between the parties hereto did not consist of an “ offer ” and “ acceptance ”, but of an “ offer ” and “ conditional commitment ”, or “ counteroffer ’ ’, and that since the counteroffer was not accepted, the parties did not enter into a binding contract.
■Consequently, plaintiff’s motion for summary judgment in the sum of $10,000, together with costs and disbursements, must be and is hereby granted and defendant’s motion is hereby denied.