**KODIAK ISLAND BOROUGH, Appellant,**

v.

**Royal LARGE, Appellee.**

**No. 4661.**

Supreme Court of Alaska.

Jan. 23, 1981.

---

Michael W. Sharon, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellant.

Robert C. Erwin, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

Royal Large first became interested in a certain parcel of land (hereinafter referred to as the 4.22 acres), which included a warehouse, located in Kodiak in 1953. Large sought to purchase the property, but it was part of a military reservation, and therefore was not obtainable. Subsequently the land was transferred to the State, and then to the Kodiak Island Borough. In 1969 Large negotiated a renewable 5-year borrow-site lease with the Borough for 6.4 acres, inclusive of the 4.22 acres and warehouse, the terms of which enabled him to remove gravel from the land.

In 1970, Large began to use the warehouse after having made some improvements on it. The warehouse had been built by the military in 1943, but had not been maintained, and by 1969, when Large's lease commenced, the warehouse was quite dilapidated. At that time, at Large's request, a Borough assessor appraised the warehouse, which was approximately 9,300 square feet, at $5,140.00.

In 1971 Large terminated the borrow-site lease and negotiated a renewable 5-year industrial ground lease for 12.88 acres, inclusive of the same area. He then requested to alter the term of his lease from 5 years to 55 years, but withdrew his request upon determining that a lease of that duration must be put to public bid. He wanted to avoid the risk of losing the warehouse after having made numerous expenditures to improve it; also, he was advised that if he waited until the Alaska Native Claims

Settlement Act became effective, he would probably get a better deal.

In 1973, Large requested a negotiated sale of the 4.22 acres, but the Borough did not authorize it. The next year, Large renewed his request, and in February 1975, the Borough agreed. The borough assembly directed the borough assessor to appraise the property. He valued the property at $29,270.00, $9,280.00 of which was the land and $20,440.00 of which was the warehouse. Large thought this was too high because the enhanced value of the building was due to his own labor; he also thought that he would be unable to purchase the property at that price because a state statute precluded negotiated sales for property valued at over $25,000.00.

In August, Large offered to purchase the 4.22 acres and warehouse for $4,798.00. The Borough took no action on that offer. In September, the Borough assembly voted to sell the property to Large for just the appraised value of the land. A reappraisal was required, and the land was valued at $10,550.00. On September 15, 1975, the Borough mayor wrote Large a letter stating that he had been authorized by the assembly to negotiate a sale of the 4.22 acres and warehouse for $10,550.00, and directing Large to respond within ten days if he wished to accept. On September 24, Large sent a letter of acceptance which proposed a down payment of 10% with the balance to be paid over 10 years at 6% interest. These were the standard contract terms utilized by the Borough. On December 23, 1975, Large submitted a check for $1,550.00 to the Borough as a down payment. The next day this check was returned and Large was informed by the Borough that his check would not be accepted until a written contract was executed. A written contract embracing the payment terms reflected in Large's letter of acceptance was prepared by the borough attorney and a copy was given to Large. However, a newly elected borough assembly decided not to complete the transaction. On January 16, 1976, Large tendered $10,550.00 and an unexecuted quitclaim deed to the Borough. This was refused and returned to him. Large then filed this suit in Kodiak.

Judge Roy Madsen granted summary judgment to Large and ordered the Borough to specifically perform the land sale contract. The Borough appeals from the denial of its peremptory challenge of Judge Madsen, the denial of its motion for summary judgment, and the granting of summary judgment to Large.

The Borough received notice of the assignment of Judge Madsen to this case on June 17, 1977, and on June 21 the Borough sought to peremptorily challenge Judge Madsen by filing a "Notice of Change of Judge" under Alaska Rule of Civil Procedure 42(c). Presiding Judge Moody denied the Borough's peremptory challenge on October 27. The Borough claims that its exercise of its right to peremptorily challenge Judge Madsen was timely, and that it was wrongfully denied.

Civil Rule 42(c) provides, in part:

(c) *Change of Judge as a Matter of Right.* In all courts of the state, a judge or master may be peremptorily challenged as follows:

(1) *Nature of Proceeding.* In an action pending in the Superior or District Courts, each side is entitled as a matter of right to a change of one judge and one master.... A party wishing to exercise his right to change of judge shall file a pleading entitled "Notice of Change of Judge." ...

.     .     .     .     .

(3) *Timeliness.* Failure to file a timely notice precludes change of judge as a matter of right. Notice of change of judge is timely if filed before commencement of trial and within five days after notice that the case has been assigned to a specific judge. In a court location having a single resident judge of the level of court in which the case is filed, the case shall be assigned to that judge when it is at issue upon a question of fact and the clerk shall immediately notify the parties in writing of such assignment....

(4) *Waiver.* A party waives his right to change a particular judge as a matter

of right when he knowingly participates before that judge in:

> (i) Any judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits; . . .

■ Large does not dispute the Borough's claim of timeliness,[1] but contends that the Borough waived its right by presenting two Civil Rule 12(b)(6) motions[2] before Judge Madsen, since those motions concerned the merits of the case and involved the consideration of evidence.[3] We agree that, at least for purposes of a Rule 42(c) change of judge, a 12(b)(6) motion concerns the merits of the case[4] and may constitute a waiver.

However, in *Tunley v. Municipality of Anchorage*, 617 P.2d 490 (Alaska 1980), we held that a *"knowing"* waiver is required by Rule 42(c)(4), and that this "can be found only where the requisite participation occurs after the party is informed that the judge before whom he or she is appearing is the judge permanently assigned to hear the case or is assigned for trial." *Id.* at 495. The effect of this rule is to preclude a finding of waiver when a party participates before a judge in matters involving the merits of the case but does so prior to that judge's assignment to the case for purposes of trial. This is because it would be neither fair nor conducive to an effective exercise of the right to require a party to challenge a judge before whom he does not know whether he will appear.

In this case, the two 12(b)(6) motions were presented before Judge Madsen before the Borough had received notice that Judge Madsen was assigned to the case for trial. Civil Rule 42(c)(3) provides in part:

> In a court location having a single resident judge of the level of court in which the case is filed, *the case shall be assigned to that judge when it is at issue upon a question of fact and the clerk shall immediately notify the parties in writing of such assignment. . . .* [Emphasis added].

In *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570 (Alaska 1969), we held that a case is at issue upon a question of fact when the parties to an action, through their pleadings, have raised some disputed question of fact, alleged to be a fact on one side and denied on the other, upon which the parties seek to obtain the decision of the court or jury. *Id.* at 573 (footnote omitted). This case was at issue upon a question of fact when the Borough filed its answer denying various factual allegations of the complaint, and thus the case was assigned to Judge Madsen at that time.

■ The only remaining question is whether the clerk's failure to immediately notify the Borough of the assignment precludes a finding that their participation in the 12(b)(6) motions before Judge Madsen

---

1. The Notice was filed "before commencement of trial and within five days after notice that the case has been assigned to a specific judge," as required by Alaska R.Civ.P. 42(c)(3).

2. A 12(b)(6) motion is one to dismiss for failure of the pleading to state a claim upon which relief can be granted.

3. In opposition to the motions, Large filed, among other things, an affidavit and exhibits. Civil Rule 12(b) provides for conversion of a 12(b)(6) motion into one for summary judgment in such instances:

> If, on a motion asserting the defense numbered (B) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

> reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Judge Madsen did not exclude the extra-pleading materials, and we note that the motion thus should have been treated as one for summary judgment. *See Martin v. Mears*, 602 P.2d 421 (Alaska 1979). However, this is of no consequence to this appeal, and therefore we need not consider it further.

4. It cannot be denied that if the moving party was successful, and the 12(b)(6) motion was granted without leave to amend, the ruling would certainly be on the merits. Characterizing an unsuccessful 12(b)(6) motion as one *not* going to the merits of the case would be contrary to the purposes of the limitations placed upon the exercise of a Civil Rule 42(c) challenge, discussed *infra*.

was "knowing" participation. We do not think it does. Although the clerk here was less than diligent in notifying the parties, since Kodiak is a single-judge district, the parties knew that Judge Madsen would be the trial judge unless he was disqualified.[5] To hold otherwise would create a situation which is susceptible to the practice of "judge-shopping," where a party could take advantage of the clerk's tardiness in formally giving notification by sampling the judge's rulings on motions presented before that time, and then availing itself of the right to peremptorily challenge the judge if the rulings are not to its liking. Under these circumstances, we find that the Borough waived its right to peremptorily challenge Judge Madsen when it made the 12(b)(6) motions before him.

The Borough claims that the court erred in denying its motion for summary judgment. Under Alaska Rule of Civil Procedure 56(c), a prerequisite to a grant of summary judgment is the determination by the court that there is no genuine issue as to any material fact. For the purposes of its own motion, the Borough assumed that a contract existed between itself and Large, but argued that the contract was unenforceable as a matter of law. Thus, for the purposes of its own motion, the Borough conceded the absence of disputed material facts. Large failed to file a timely statement of genuine issues as required by Civil Rule 56(e)[6] and thereby failed to sustain his burden of demonstrating that there is a triable issue of fact. *Hickel v. Stevenson*, 416 P.2d 236 (Alaska 1966).

The Borough argues that it was entitled to judgment as a matter of law on several grounds. First, the Borough contends that KIBC 18.48.070, under which the alleged contract was made, is inconsistent with state law and therefore invalid, and that this renders the contract unenforceable. The Borough contends that the borough ordinance is inconsistent with AS 29.48.260.[7]

The pertinent provisions of AS 29.48.260 provide:

(c) The assembly or council shall by ordinance establish a formal procedure for the sale, lease or disposition of real property or interest in real property. The ordinance shall require (1) an estimated value of the property by a qualified appraiser or the assessor; (2) a notice of sale published in a newspaper of general circulation distributed within the municipality at least 30 days before the date of the sale, lease, or disposition, or posted within that time in at least three public places in the municipality; (3) public auction or opening of sealed bids, if any; and (4) other terms and conditions fixed by the assembly or council. However, no ordinance for the sale, lease, or disposition of real property or interest in real property valued at $25,000 or more is valid unless ratified by a majority of the qualified voters voting at a regular or special election at which the question of the ratification of the ordinance is submitted.

(d) The assembly or council may by ordinance establish a formal procedure for acquisition from the state of land or

---

5. This, of course, distinguishes the present case from *Hartford Accident and Indemnity Co. v. State*, 498 P.2d 274, 276 (Alaska 1972) which arose in a multi-judge district. The presumption that the resident judge in a single judge district will hear cases filed in that district is in some respects analogous to the presumption we noted in *Priest v. Lindig*, 591 P.2d 1299, 1301 (Alaska 1979) that when a case is "reversed and remanded ... for a new trial, it would be fair to presume that the same judge would preside at the second trial in the absence of a reassignment to another judge."

6. Alaska R.Civ.P. 56(e) provides in part:
When a motion for summary judgment is made and supported as provided in this rule,

an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him.

7. It is not disputed that Kodiak Island Borough, a second class borough, is a general law municipality, AS 29.08.030, possessing only the legislative powers conferred by law, AS 29.08.020, and subject to general laws of the state.

rights in land and the disposal of the land or right in land, in which event the provisions of (c) of this section do not apply. The Borough is subject to this general law which regulates the acquisition and disposal of municipal property.

KIBC 18.48.070 provides:

*Sale procedure.* The sale shall be made at public auction or by sealed bid to the highest qualified bidder as shall be determined by the borough chairman. *However, the borough chairman, when so authorized by the borough assembly, may enter into negotiated sales for tracts of land of five acres or less directly with the applicant for such land.* Public sales shall be conducted by the borough chairman or his representative and, at the time of sale, the successful bidder shall deposit in cash or by certified check, an amount equal to one-tenth of the purchase price and the balance of the purchase price shall be payable on delivery of the deed. However, a contract of sale may be entered into by the borough and the purchaser on a form approved by the borough attorney and shall be signed by the purchaser and, following the approval of the borough assembly, shall also be signed by the borough chairman and presiding officer, which contract provision shall provide for the payment of the purchase price in monthly installments with interest and for the deposit of a deed to the property purchased, along with a copy of the contract of sale in an escrow agreement. [Emphasis added].

In addition, KIBC 18.48.050 requires an appraisal of the subject property within 90 days of the sale, and KIBC 18.48.080 requires the same public notice specified in AS 29.48.260(c)(2).

■ The alleged contract between Large and the Borough for sale of the 4.22 acres was a negotiated sale. Although AS 29.48.-260(c) requires competitive bidding, subsection (d) dispenses with this requirement in certain cases:[8]

The assembly or council may by ordinance establish a formal procedure for acquisition from the state of land or rights in land and the disposal of the land or rights in land, in which event the provisions of (c) of this section do not apply.

We believe that KIBC 18.48.070, insofar as it applies to state land comes within this exception to the procedures required by subsection (c), and therefore is not invalid.

■ The second ground upon which the Borough contends that it is entitled to judgment as a matter of law is that the contract is unenforceable because sale of municipal property for less than its properly appraised value violates state law,[9] borough law,[10] and the Borough's fiduciary duty to other taxpayers. The Borough contends that the properly appraised value would necessarily include the value of the warehouse which was on the land; the appraised value that was established for the property for purposes of its sale price to Large, $10,550.00, did not include the warehouse. Large contends that the borough assembly had the discretion to choose not to include the value of the warehouse in light of Large's own

---

**8.** Another exception, not pertinent here, is found in subsection (e), which allows sales of land that will be used for beneficial new industries upon conditions considered advantageous to the municipality.

**9.** The Borough cites AS 29.48.260(c), which we have determined is inapplicable here.

**10.** KIBC 18.48.050 states:

*Appraisal.* No borough lands shall be leased, sold, exchanged, or a renewal lease issued unless the same has been appraised within ninety days prior to the date fixed for the beginning of the term of the sale, lease, exchange or renewal lease. Appraisals shall

reflect the number and value of borough services rendered to the land in question, its location, and other facts affecting its desirability. Similarly, the borough assessor shall appraise any lands in like manner which the borough plans to take in exchange for borough lands not used or needed for public purposes.

KIBC 18.52.020 states in pertinent part:

*Minimum rental or sale prices....* The minimum sale price shall be the approved appraised market value and shall be the lowest acceptable bid in the event of an auction or sealed bid sale.

expenditures which greatly enhanced the value of the warehouse.[11] There was testimony by several assembly members that the warehouse had deteriorated almost completely when Large took possession of it, and one person referred to the structure as "remnants of a World War II warehouse that Mr. Large renovated and upgraded." Another assembly member stated that Large "had maintained it, where if it hadn't been it would have deteriorated completely." We agree with Large that the borough chairman and the assembly had the discretion under the negotiated sale clause of KIBC 18.48.070 to recognize the value of Large's work and determine that but for his labor, the warehouse would not have continued to exist, and therefore decide that he should not be charged for it. Thus, we find that the Borough failed to sustain its burden of showing that the alleged contract was unenforceable and that the Borough was entitled to judgment as a matter of law.

Next, we consider whether the court erred in granting summary judgment to Large. Since we have determined that assuming the existence of a contract, it was not unenforceable, two issues remain. We must determine whether there were disputed material facts, and whether the alleged contract existed.

Since summary judgment was granted for Large, on appeal all disputed inferences of fact must be drawn in favor of the Borough. *Clabaugh v. Bottcher*, 545 P.2d 172 (Alaska 1976).

■ As noted above, the Borough conceded, for purposes of its own motion, both the existence of a contract and the absence of disputed material facts. On appeal, the Borough argues that the trial court erred

because it based its finding, in granting summary judgment to the non-moving party, on the moving party's concession of absence of any material factual dispute. The Borough argues that a grant of summary judgment to a non-moving party is proper only if both sides agree that there is no material fact in issue and join in a request that the court make a decision based on the motion made by only one of them. The Borough is correct in its statement of the law that the trial court may not base its finding of absence of disputed material fact on the moving party's concession made solely for the purposes of its motion.[12] However, the determination of whether a genuine issue of fact exists is a question for the court and as such does not depend upon what the parties think.[13] The court obviously is not precluded from finding that no actual factual dispute exists merely because one or both parties allege the contrary.[14]

The Borough presents no support for its claim that the court based its decision on the Borough's concession. The court had before it, in addition to the pleadings and memoranda of law, the depositions of five witnesses. And nowhere in its brief does the Borough cite any facts that are disputed or conflicting; it simply states "[t]he issue of the alleged agreement is of course disputed by the Borough." It is evident that the issue over which the Borough is here concerned is not truly a factual dispute, rather it is as to the legal interpretation to be given to the undisputed facts.

The Borough makes several arguments regarding the court's alleged error in finding the existence of a contract. First, the Borough argues that since the court granted summary judgment to the non-moving party, and since the Borough conceded the existence of a contract for the purposes of

---

11. When Large first took possession of the property under his lease in 1969, the warehouse had an appraised value of $5,140.00. In 1975, the warehouse was appraised at $20,440.00. Among other things, Large had cleaned the warehouse, repaired the cracked trusses, and put on a new roof.

12. *See* 10 Wright and Miller, Federal Practice & Procedure § 2720, at 462.

13. *See, e. g., Brawner v. Pearl Assurance Ltd.,* 267 F.2d 45, 46 (9th Cir. 1958).

14. *See, e. g., Federal Deposit Ins. Corp. v. Sumner Financial Corp.,* 376 F.Supp. 772 (M.D.Fla. 1974); 6 Moore, Moore's Federal Practice ' 56.12 at 56–334.

its own motion, the Borough was never afforded the opportunity to argue against the existence of the contract, and reversal is required. We find this claim to be without merit. The Borough's Rule 12(b)(6) motions were based on its assertion that the contract did not exist. Moreover, since the question is as to the legal consequences of undisputed occurrences, this court will make its own determination, and the Borough can and has argued the merit of its position on appeal.

■ Secondly, the Borough argues that the court relied upon evidence that was inadmissible, that is, a letter that was never authenticated, to reach its determination. We agree with Large that since the letter was read into the record during one of the depositions, and its validity was never disputed, the error, if any, would be harmless. *Concerned Citizens v. Kenai Peninsula Borough*, 527 P.2d 447 (Alaska 1974); *Kvasnikoff v. Weaver Bros., Inc.*, 405 P.2d 781 (Alaska 1965).

Finally, the Borough claims that the writings do not have the requisite certainty of terms of a specifically enforceable contract.

The language of the offer is as follows:

The Assembly has authorized this office to negotiate a sale for the 4.22 acres of land for a price of $10,550.00. This would be $2,500 per acre. Please be advised that you should notify this office within ten days, or by September 25, 1975, if you wish to accept this proposed sale price.

The language of the acceptance, dated September 24, 1975, is as follows:

I accept the price of $10,550.00 for the 4.22 acres of land that you suggest in your letter 15 September, 1975.

I note that you say you have the power to negotiate, which I presume means to discuss and agree upon the mode of payment.

I propose a down-payment of ten percent (or $1,000) and propose the payment of the balance over a term of ten years at six percent (6%) interest on the unpaid balance.

Please notify me of a convenient time that we may meet to finalize this matter.

■ The Borough cites *Hollaus v. Arend*, 511 P.2d 1074 (Alaska 1973) as support for its claim that these writings lack the required specificity to be enforceable. In *Hollaus*, this court stated:

It is well established that a contract "must be reasonably definite and certain as to its terms" to be specifically enforceable. Further, as this court recently recognized, "A greater degree of certainty is required for specific performance than for damages...." [Footnotes omitted].

511 P.2d at 1075. In that case many material terms were omitted and we found that the gaps were such "as to manifest a failure to reach an agreement," and we therefore denied specific performance. On the other hand, where the gap in the agreement can be filled in a manner reasonably certain to correspond to the reasonable expectations of the parties, specific performance should be granted. *See Rego v. Decker*, 482 P.2d 834 (Alaska 1971).

Further, it is clear that the offer constituted an invitation to contract, as opposed to mere preliminary negotiations, despite its paucity of terms. As Professor Williston states:

Where the property to be sold is accurately defined and an amount stated as the price in a communication made, not by general advertisement, but to one person individually, no reasonable interpretation seems possible except that the writer offers to sell the property described for the price mentioned. [Footnote omitted].[15]

Thus, to determine whether an enforceable contract has been created, it is necessary to evaluate the nature of Large's reply to the offer. If the reply is a valid acceptance, an enforceable contract would be created. If the terms suggested by Large constitute a conditional acceptance, it would

---

15. S. Williston, Williston on Contracts § 27 at 64, (Jaeger, 3d ed. 1957).

be a counter-offer and thus a rejection of the original offer.[16]

However, when the acceptance of the offer is initially unconditional, the fact that it is accompanied by a request or a direction looking to the performance of the contract does not render the acceptance ineffective nor give it the character of a counter-offer so long as it does not limit the contract.[17]

Here, Large unequivocally accepted the Borough's offer. The fact that the assent was accompanied by a suggestion as to terms of payment, a detail not inconsistent with the Borough's offer, did not convert it into a counter-offer. Large's proposed payment terms were in accord with the standard contract terms used by the Borough in its land sales contracts. They were set forth in the form contract prepared by the borough attorney and the Borough did not refuse to complete the transaction because of any disagreement concerning them. Large's reply was an unconditional assent which did not materially depart from the offer.

Therefore an enforceable contract was created and the judgment is AFFIRMED.

---

**16.** *Id.* § 77 at 251–2.

**17.** *Valashinas v. Koniuto,* 283 A.D. 13, 125 N.Y. S.2d 554 (N.Y.App.Div.1953), *aff'd.* 308 N.Y. 233, 124 N.E.2d 300 (N.Y.1954). *See also Brangier v. Rosenthal,* 337 F.2d 952, 954 (9th Cir. 1964); A. Corbin, Corbin on Contracts §§ 84, 93 (1963 ed.).