[Civ. No. 1307.   Third Appellate District.—February 18, 1915.]

## PAUL C. ALEXANDER, Respondent, v. P. H. BOSWORTH et al., Appellants.

HUSBAND AND WIFE—PURCHASE WITH COMMUNITY FUNDS—DEED TO WIFE BY DIRECTION OF HUSBAND—INTENT TO MAKE GIFT.—Where a husband purchases property with community funds and has the conveyance executed to his wife, it will be presumed that he intended to make a gift of the property to her, in the absence of any evidence showing a contrary intention, and the fact that the husband continued thereafter to manage the property is no evidence of such a contrary intent.

ID.—GUARANTY—AGREEMENT TO REPURCHASE STOCK—SECURITY FOR PERFORMANCE—DEED OF TRUST UPON WIFE'S PROPERTY—LIABILITY OF WIFE.—A wife who joins with her husband in the execution of a deed of trust upon her separate property to secure the faithful performance of his guaranty to repurchase certain corporate stock sold by him, in the event that the purchasers shall exercise their option of resale within a stated time, thereby becomes a promisor "to answer for the debt, default or miscarriage" of her husband, and her contract is within the code definition of guaranty, notwithstanding that she did not sign the conditional contract to repurchase.

ID.—EXTENSION OF GUARANTY — IGNORANCE OF WIFE — EXONERATION FROM LIABILITY.—A wife who has joined with her husband in the execution of a deed of trust upon her separate property to secure the performance of her husband's agreement to repurchase certain corporate stock sold by him upon certain conditions, is exonerated from liability, where the time of performance is extended without her consent or knowledge, and the trustee under the deed is not liable in reconveying the property in the absence of any proof of knowledge on his part of the extension of the option.

ID.—CONTRACTS—OPTION FOR RESALE OF STOCK—CONDITIONS—ACCEPTANCE OF INDEFINITE EXTENSION — OPTION NOT EXERCISED. — An option for the resale of corporate stock reciting that the vendor will repurchase the stock on a certain date at a fixed price, provided that the purchaser makes a tender and demand for repurchase on or before such date, is not exercised in time, where the latter makes no such tender and demand within the time limited, but consents to an indefinite extension of the time for the repurchase of the stock.

ID.—OPTIONS—ACCEPTANCE—RULE.—It is a well settled principle, applicable to options as to other contracts, that the offer must be accepted in the terms in which it is made, and the alteration of such terms, or the addition of any condition or limitation, is tantamount to a rejection of the original offer and the making of a counter offer.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

W. T. Kearney, for Appellants.

Finch & Melsted, for Respondent.

BURNETT, J.—A rehearing was granted in this case, and counsel for both parties have spared no efforts further to en-. lighten the court in reference to the vital questions involved herein. The character of the property, whether community or separate, has received special consideration and in the briefs the various decisions of the appellate courts of this state have been carefully analyzed and distinguished. We deem it necessary, however, to call specific attention to only two or three of these as there can be little question about the law, although, admittedly, some inaccurate expressions are employed in a few of the opinions.

In *Hamilton* v. *Hubbard,* 134 Cal. 605, [65 Pac. 322], it is said: "A deed of conveyance is not merely evidence of a gift or other grant. It is the gift or grant itself, and *ipso facto* operates to transfer or convey the title of the property described to the grantee. (Civ. Code, secs. 1053, 1146; *Shanahan* v. *Crampton,* 92 Cal. 11, 13, [28 Pac. 50].) . . . Under our law, a husband may make a deed—whether of his own or community property—to his wife, and in such case it is well settled that in the absence of evidence of a contrary intent, the deed will vest in her the land conveyed as her separate estate." (Citing cases.)

In *Alferitz* v. *Arrivillaga,* 143 Cal. 649, [77 Pac. 658], it is declared: "The same principle applies where the deed is made by a third party to the wife at the husband's request. Here all presumptions are in favor of the conveyances to the wife. They are presumed to have been made for a consideration paid by the wife, or if we concede that the consideration was paid by the husband, it will be presumed that the property was intended as a gift to the wife as her separate property. Facts must be proven from which it is clearly made to appear that

the property, in such case, is community property, or the deed will be given effect according to its terms."

In *Fanning* v. *Green,* 156 Cal. 283, [104 Pac. 311], it is said: "The well-settled rule is, as stated in *Nilson* v. *Sarment,* 153 Cal. 524, [126 Am. St. Rep. 91, 96 Pac. 315], 'where a husband purchases property with community funds and directs the conveyance to be made to his wife, with the intent to make it her separate property, the deed will operate to vest the property in her as her separate estate.' The intent to make it *hers,* her separate property, is a material factor in such a case, and while such intent may, and possibly must, be inferred where there is no other evidence than that showing the mere direction by the husband, it may also be shown not to have existed by any competent evidence." Without quotation, we may refer also, for an interesting discussion of the question, to *Carle* v. *Heller,* 18 Cal. App. 577, [123 Pac. 815].

Applying to the facts here the foregoing enunciated principles, it seems impossible to avoid the conclusion that the realty in controversy was the separate property of the wife. It was deeded to her on March 7, 1905. Since her husband attended to the transfer, he knew, of course, that she was the grantee named in the deed. He must be presumed to have intended the natural consequence of such conveyance. Granting that it was purchased with community funds, we must assume that the husband intended to make a gift of it to his wife. There is not a syllable of evidence that his intention was otherwise. There is no showing that either was not acting in the utmost good faith. There is not a suspicious circumstance connected with the transaction. There is no evidence even that he was in debt at the time or that he had in view any possible creditors, or that his motive in having the property conveyed to his wife was to prejudice any one whatsoever. It is for the court to determine his intention from his acts, declarations, and conduct at the time. (*Killian* v. *Killian,* 10 Cal. App. 318, [101 Pac. 806]; *Woods* v. *Whitney,* 42 Cal. 358.) It must be remembered that this conveyance to the wife was executed more than three years before the execution of the guaranty in question. If these instruments had been coincident or nearly so in their origin some suspicion might thereby be cast upon said deed, but no such condition exists. The only circumstance relied upon by respondent is the fact that the husband continued in the management of the prop-

erty. This, however, is equally consistent with separate ownership in the wife as in the community. Most wives prefer to have their husbands attend to all business matters in relation to the property of either or both. We may take it for granted that this is the ordinary and natural condition and in this case it is quite evident from the record that Mrs. Bosworth desired her husband to assume all the responsibility of that character.

We may say, then, that, independent of the legal presumptions, no evidence of the intention that moved Mr. Bosworth in having the deed executed to his wife is inconsistent with the terms of the deed itself. In fact, we may go further and say that what there is—slight as it may be—strengthens the presumption that it was intended to be her separate property. For Mrs. Bosworth testified that "Paul Bosworth never had any interest in the property" and, on cross-examination, he testified that he claimed "to have no interest in the property."

It seems equally clear that plaintiff did not exercise his option to sell the stock. Instead of making a tender he submitted an alternative proposition to Bosworth and the latter accepted the agreement to extend the time. It cannot be said that there was any waiver of the tender. The rule as to that is: "In order to constitute an implied waiver of an offer or tender by refusal of the other party to perform his promise, there must be a distinct and unequivocal absolute refusal to perform the promise, which must be treated and acted upon as such by the party to whom the promise was made." (*Hanson* v. *Slaven,* 98 Cal. 377, [33 Pac. 266].) Respondent relies upon section 1440 of the Civil Code to excuse his failure to make tender, but that can afford him no comfort. Mr. Bosworth did not give notice to Mr. Alexander before the latter was in default that he, the former, would not perform his promise. Mr. Alexander submitted the new proposition before anything was said about Bosworth's ability to pay the money. As far as the original contract is concerned, therefore, Alexander was first in default, and, besides, it does not appear that Bosworth could and would not have secured the money for the repurchase by the first of July if Alexander had insisted upon it.

Assuredly there is no evidence to support the allegation of the complaint "that prior to the first day of July, A. D. 1909,

plaintiff herein *demanded* that said P. H. Bosworth *should repurchase* said shares of stock and *tendered* said stock to said P. H. Bosworth."

After further consideration we adhere to our former opinion, which is as follows:

"The amended complaint alleges that the defendant, P. H. Bosworth, on October 14, 1908, executed a contract wherei.. he guaranteed that a certain one thousand shares of the capital stock of the San Francisco Concrete Building Construction Company, sold to plaintiff by said Bosworth, would be worth one dollar per share on July 1, 1909, and that the plaintiff, Alexander, should have the option of retransferring said stock to said defendant, on July 1, 1909, provided said Alexander made a tender and demand under said option on or before said last-named date. That the performance of said guarantee and agreement was secured by a certain deed of trust of certain improved real property in San Francisco, said deed of trust being executed by defendant P. H. Bosworth and his wife, said defendant Agnes C. Bosworth, to P. C. Huntington. 'That prior to the first day of July, A. D. 1909, at the city and county of San Francisco, state of California, plaintiff herein demanded that said P. H. Bosworth should repurchase said shares of stock, and tendered said stock to said P. H. Bosworth; that then and there said P. H. Bosworth requested said plaintiff herein to retain said shares of stock temporarily and waive in writing the right of said plaintiff herein, to demand the retransfer of said stock, and said defendant P. H. Bosworth did then and there agree with said plaintiff herein that said deed of trust should continue as security for said sum of one thousand dollars indefinitely until the said property had been sold and said P. H. Bosworth did then and there indorse in writing upon said guarantee the words appearing upon the top of said guarantee, and reading as follows, to wit: "This guarantee is good indefinitely until property is sold." ' Then follow allegations of the transfer of said property by said Huntington on July 13, 1910 (1909?) to said P. H. Bosworth and by the latter, on October 2, 1909, to Virginia Bosworth, without the knowledge or consent of plaintiff, and that each of said transfers was made without any consideration whatever and with the intent to defraud plaintiff and for the purpose of destroying his security and of defeating his right to secure said sum of one thousand dollars from said

26 Cal. App.—38

defendant P. H. Bosworth. The prayer was for annulment of these deeds and that Virginia Bosworth be compelled to execute to a trustee to be appointed by the court a trust-deed in conformity with the terms of said guarantee and that said trustee be authorized and directed to sell said property and from the proceeds thereof to pay to plaintiff herein said sum of one thousand dollars and interest.

"The answer of Agnes C. Bosworth tendered an issue as to each of the material allegations of the complaint, except as to the execution of said deed of trust and averred that 'she never had any notice or knowledge of said indorsement and never consented to the making of the same, and the same, if made, was entirely without consideration'; that said property was, at all times mentioned in the complaint, her sole and separate property and 'that all the said conveyances and deeds mentioned in said complaint were duly recorded more than one year before the commencement of this action, and that said plaintiff had actual and full knowledge of the same for more than one year before the beginning of this action.' It was further averred that Huntington had no notice or knowledge of said indorsement upon said guarantee, that he never consented to the making of the same, and that said conveyances were all openly and fairly made for a good and valuable consideration and without any fraudulent intent or purpose to defeat any right of plaintiff.

"The findings were in favor of plaintiff, and he was awarded judgment against P. H. Bosworth, Agnes C. Bosworth, and P. C. Huntington for the sum of $1,000 with interest from October 15, 1908, and it was decreed that plaintiff holds a lien on said real property, that said conveyances thereof are and each of them is null and void and of no effect and that said property be sold to satisfy said claim of plaintiff.

"The said trust-deed, as recited therein, was 'for the purpose of securing the due and full performance of the obligations that may arise by reason of the sale of eight thousand shares of the stock or part thereof, and by reason of the making in connection with said sale or sales of said guaranty and agreement on the part of P. H. Bosworth' and it was expressly provided therein: 'First. If on the 1st day of July, 1909, the said P. H. Bosworth shall fail or neglect to pay the sum of one dollar per share, for each and every share offered to be

resold to said P. H. Bosworth by any purchaser who shall
have bought from said P. H. Bosworth, any part of the afore-
said eight thousand shares under the aforesaid offer of sale
and who shall before the said first day of July, 1909, exercise
the option of reselling the said shares to said P. H. Bosworth,
as provided for in and by the guaranty and agreement afore-
said, then and in that event and on application of any pur-
chaser who has properly exercised his option and from whom
said P. H. Bosworth has failed or neglected to buy back said
shares or any part thereof as agreed, the said party of the
second part shall sell the above granted premises in the man-
ner hereinafter set forth and shall, on behalf of said P. H.
Bosworth, with the proceeds of said sale, repurchase said
shares in the manner hereinafter set forth. Secondly. In
case said P. H. Bosworth shall well and truly perform his obli-
gations arising under and by virtue of the guaranty and agree-
ment aforesaid, and shall buy back at one dollar per share
any and all of said eight thousand shares that shall be offered
to said P. H. Bosworth in the proper exercise of the option
aforesaid, then the said party of the second part and his heirs
shall reconvey all the estate in the premises aforesaid to the
parties of the first part, or to either of said parties of the
first part upon the request of and as requested by said parties
of the first part.' It was further provided that 'If the option
aforesaid is not exercised on or before July 1st, 1909, the pur-
chaser will be deemed to have elected to keep the shares of
stock.'

"The nature of P. H. Bosworth's original obligation is not
the subject of controversy. His promise, as seen, was to re-
purchase the stock at one dollar per share provided that the
purchaser from him exercised his option to sell on or before
July 1, 1909. Of course, if said option was not exercised
within said period of time, Bosworth would be released from
any obligation or duty in the premises. Agnes C. Bosworth
did not sign this conditional contract of repurchase but, as
we have seen, she joined in the execution of said trust-deed
and thereby she became a guarantor or surety for the faithful
performance of P. H. Bosworth's obligation and she subjected
her interest in said property to a charge or lien to answer
for the default of her husband. It is probably not important
whether we consider her contract technically a guaranty or
suretyship as the measure of her obligation is not thereby

affected. She certainly promised 'to answer for the debt, default or miscarriage' of said P. H. Bosworth and therefore her contract is within the code definition of guaranty. (Civ. Code, sec. 2787.) Her relation to the transaction is, however, more strictly expressed in the language of section 2831 of said code as follows: 'A surety is one who at the request of another and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor.' She became responsible for the performance of said act on the part of P. H. Bosworth in favor of the purchasers of said stock and she hypothecated her property as security for the performance of said act. The measure of her obligation could not, of course, exceed that of her principal. She was required to answer only for his default and that was conditional, as we have seen, upon a demand for the repurchase of the stock.

"The position of Huntington was that of a trustee charged with the duty of disposing of said property so as to satisfy the demand of the purchaser of stock in case of the default of said P. H. Bosworth, and in the event that there was no default on July 1, 1909, he was to reconvey the property to the Bosworths or to either as directed. This deed of trust operated, in other words, as a mortgage of said property as security for the performance of said obligation of P. H. Bosworth. 'A mortgage is a pledge or security for a debt, whatever may be the form which the transaction takes, whether a simple mortgage deed in form, or a mortgage with a power of sale, or a deed in trust, or a deed absolute on its face, accompanied by an agreement in writing to reconvey, or to sell, or to do any other thing upon the payment of a certain sum of money; courts of equity look upon it as a mortgage and deal with it as such. And it is immaterial that the conveyance is made to a third person, and not to the creditor himself.' (Perry on Trusts, sec. 609d.) 'Such deeds may be executed for the payment of debts or for the performance of any kind of a legal obligation, whether of the grantor or of a third person.' (Perry on Trusts, sec. 602f.)

"What, then was the situation of the parties at the begining of this action? Had P. H. Bosworth suffered default on July 1, 1909, within the contemplation of said contract of guaranty? The answer to this question depends, manifestly,

upon the consideration whether plaintiff had exercised his said option to sell his stock. In other words, Did he make a tender of it and demand the repurchase by P. H. Bosworth? The latter testified positively to the negative, but it is claimed by respondent that a contrary view is supported by his own testimony. This, in full, was as follows: 'I had a conversation with Mr. Bosworth in regard to this stock at my office a number of days prior to July 1, 1909, at which Mr. Bosworth and myself, and no one else, was present. I was, of course, anxious about my money that was tied up in this proposition, and had him come to my office and told him that I wanted either my money or a further guarantee. He told me he was not in a position to pay me the money at the time but was willing to extend the guarantee of stock, which he did. He wrote a further guarantee on the original guarantee as follows: ''This guarantee is good indefinitely, until property is sold. P. H. Bosworth.'' ' This extension of the guarantee was written at the top of the original guarantee by Mr. Bosworth, in my office at the time he called there, which was several days before July 1, 1909. I did not ask anybody besides Mr. Bosworth to give me back this money. I never asked Mr. Huntington to give me this money, nor did I ask Mrs. Agnes Coryell Bosworth for the money. I never served any notice, or made any demand upon Mr. Huntington to hold this property. I presume that I merely relied upon the extension of the guarantee written by Mr. Bosworth upon the original guarantee. I never attempted to sell the stock to anybody, and I am morally certain that it was worthless.'

''It is a well-settled principle, applicable to options as to other contracts, that the offer must be accepted in the terms in which it is made, and the alteration of such terms, or the addition of any condition or limitation, is tantamount to a rejection of the original offer and the making of a counter offer; and furthermore, where the exercise of an option depends upon the performance of acts which are in their nature or by express agreement made conditions precedent to such exercise, all such acts must be strictly performed. (21 Am. & Eng. Ency. of Law, p. 930.)

''Thus, where one has the option to return certain stock purchased and to receive a specified price therefor, he must actually return it and it is not sufficient to deposit it in a bank

and notify the vendor of the fact. (*Orvis* v. *Waite,* 58 Ill. App. 504.)

"We think it is very clear that there was in the instant case no such exercise of plaintiff's option as the law exacts. There was no tender of the stock and there was no demand for the payment of the money. Indeed, a counter offer was submitted, which was accepted by Bosworth, and thereby a new contract was created. The evidence, viewed most favorably for respondent, shows that he did not stand upon his original contract, but was entirely willing to have it supplanted by a totally different guaranty and he did not take the step that was necessary to convert Bosworth's conditional contract into one fixed and absolute.

"As plaintiff did not exercise his option to buy within the time specified, the evidence does not support the finding of the court 'That prior to the first day of July, A. D. 1909, at the city and county of San Francisco, plaintiff herein demanded that said P. H. Bosworth should repurchase said shares of stock, and tendered said stock to said P. H. Bosworth,' and he acquired no right under the original contract to bring an action against any of the parties defendant. It may be observed, also, that if plaintiff intended to count upon the first contract of warranty he should not have waited for nearly two years before instituting the action. (*Sayre* v. *Citizens' Gas Light & Heat Co.,* 69 Cal. 207, [7 Pac. 437, 10 Pac. 408] ; *Chapman* v. *Bank of California,* 97 Cal. 155, [31 Pac. 896].) The fact is, however, that he relied and still relies upon the second contract whereby the time for the repurchase of the stock was indefinitely extended.

"Nothing is alleged against the validity of this agreement and we may assume that it was binding upon P. H. Bosworth, but we can find no warrant for holding that Mrs. Bosworth was or is subject to its operation. There is not a particle of evidence that she consented to it or had any knowledge or information concerning it. Nor was it shown that P. H. Bosworth was authorized to represent her in the transaction. She was not made liable either by her acts or by her conduct. It surely cannot be maintained that Bosworth was her agent for this purpose by virtue of the fact that he was her husband or for the reason that she intrusted him with the management of other business matters. The only shadow of reason for respondent's contention is furnished by her testimony as

follows: 'My cousin has never been fully paid back the amount which we borrowed from him with which to buy the lot. I do not know how much we still owe him. I don't know whether my husband would know how much we owe him or not. We never talk those things over. My husband attends to all of those matters and I don't attend to any business affairs at all, and I don't know whether the mortgages to the Hibernia Bank have been paid off or not. I took no part in the business affairs of the San Francisco Concrete Building Construction Company. I had nothing to do with it at all. I did not want to turn the property over to Mr. Huntington, but my husband talked me into it. He almost forced me to do it. He asked me to turn the property over to Mr. Huntington, and I did so. I had nothing whatever to do with the business and my husband attended to all that so far as the Bosworth family was concerned.' The foregoing does not justify the inference that he was authorized to extend the guaranty. On the contrary, she was reluctant to execute it in the first instance and, furthermore, she testified: 'The proposition of my making the deed to Mr. Huntington, as I thought, was that it should be in trust for a certain time.'

"Of course, a party cannot be bound by a contract that he has not made or authorized, and the principle is well settled that the liability of a surety is not to be extended, without his consent, beyond the precise terms of his contract. (Civ. Code, sec. 2819; *Pierce* v. *Whitney*, 63 Cal. 543.)

"It is also true that the burden of proof was upon plaintiff to show that Agnes C. Bosworth consented to the extension of the original obligation. (*Tuohy* v. *Woods*, 122 Cal. 665, [55 Pac. 683].) In this he failed, although his attention was called to the consideration by express averments in the answer.

"The two cases cited by respondent do not support his contention. The important question in *Tuohy* v. *Woods*, was as to the burden of proof in reference to the consent of the surety where there was an extension of time for payment and the supreme court said: 'When a surety has shown that the contract as to which he became surety has been changed, he has then shown that there has been an attempt to make him liable on a new and different contract; and the burden is then upon the other party to show that the surety has consented to the new contract.'

"In *Chapman* v. *Hughes,* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982], there was positive evidence that the husband was authorized to act for the wife in the very transaction.

"Agnes C. Bosworth having been exonerated from liability by the execution of another guaranty to which she was not a party, her property was relieved of the lien with which it was charged to secure her obligation. It may be conceded that any interest in said property held by P. H. Bosworth would still be subject to the burden, but, under the evidence as disclosed by the record, it must be held that it was the separate property of his wife. The deed was made to her alone and therefore the presumption follows that it was her separate property. (Civ. Code, sec. 164.) The evidence that the property was purchased partly by money borrowed on mortgage security thereon would strengthen the presumption. (*Dyment* v. *Nelson,* 166 Cal. 38, [134 Pac. 988].) Besides, she testified positively that 'Paul Bosworth never had any interest in the property.' There was no evidence to the contrary.

"We think also that there is no warrant for the judgment for one thousand dollars against Huntington. It is not doubted that a trustee is held to a strict accountability for his stewardship. He acted, however, in the utmost good faith and the court so found. According to the terms of the trust he was to convey to the trustors if there was no delict of P. H. Bosworth on or before July 1, 1909. He was informed that the purchasers were satisfied and he had no knowledge to the contrary or of any fact that would make it his duty to make further inquiry. It could not be expected that he would consult the books of the corporation to ascertain the names of all the stockholders and then seek of them information as to whether there had been any default. If plaintiff desired the trustee to still hold the property he should have informed him of the extension of the guaranty by P. H. Bosworth.

"Aside from the foregoing, it is apparent that plaintiff suffered no detriment from the conveyance executed by Huntington. The title having become reinvested in Agnes C. Bosworth, the land was subject to the same burden as though it were still held by Huntington for the purpose of the trust, and the remedy of plaintiff or the availability of his security was not affected in the least by said action of the trustee. Moreover, if it be true, as we have stated, that the liability

of Agnes C. Bosworth terminated, the trust thereby became extinguished and Huntington was justified in conveying the land as he was directed.''

We think the judgment and the order should be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.