In re PAGO PAGO AIRCRASH OF JANUARY 30, 1974.

John DIBLEY et al., Plaintiffs/Appellees,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant/Appellant.

Josephina Eliza Maria VAN BOXTEL, Plaintiff/Appellee,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant/Appellant.

Nos. 79–3163, 79–3164.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1980.

Decided Jan. 26, 1981.

Gregory A. Long, Overton, Lyman & Prince, Los Angeles, Cal., for Pan American World Airways.

Michael D. Moorhead, Los Angeles, Cal., for John Dibley et al.

Before SKOPIL and NELSON, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Pan American World Airways, Inc. (Pan Am) appeals the judgments in favor of the survivors of passenger Dibley and the Estate of passenger Van Boxtel, respectively, for a settled amount of general damages, attorney's fees, costs incurred in post–settlement discovery and pre–judgment interest as entered by the District Court on February 16, 1979. We note jurisdiction under 28 U.S.C. § 1291 and vacate the judgments and remand the causes for trial on the issue of damages.

I. BACKGROUND

On January 30, 1974, a Pan Am Boeing 707 crashed near Pago Pago. Passengers Dibley and Van Boxtel died in the accident. Numerous suits arising from this accident were filed against Pan Am. The Judicial Panel on Multidistrict Litigation consolidated these suits for pretrial proceedings in the Central District of California, and later the parties stipulated that the actions be transferred there for all purposes. Boeing was a co–defendant, and Pan Am named the United States as a third party defendant. Because both cases involved here raise identical issues, we reference Dibley only.

In the bifurcated trial during the summer of 1978, the jury returned a verdict against Pan Am on the issue of liability. Settlement negotiations followed between Alpert, associate director of claims for Pan Am's insurance company, and Cathcart, attorney for the Dibleys. The negotiations culminated on August 15, 1978, in settlement offers contingent on acceptance by Dibley of numerous conditions.[1] September 1, 1978 was the deadline for acceptance of these offers.

On August 31, 1978, Cathcart sent a letter (Dibley's reply) to Tucker, attorney for Pan Am, which allegedly accepted the settlement offers.[2] On September 6, 1978, Al-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The only condition relevant to our decision is condition 1):
   "Conditions precedent to the settlement of any passenger claims arising out of the captioned accident.
   "1) A complete release of all defendants including, but not limited to, Pan American, the Estates of the deceased crew members, The Boeing Company, the United States of America and their agents, servants and employees."

2. The full text of Dibley's reply is as follows:

   "I have been instructed by my referring counsel to accept the following offers of settlement:

   | "HILL | $130,000.00 |
   |-------|-------------|
   | DIBLEY | 150,000.00 |
   | IAFETA | 75,000.00 |
   | TANIELA | 200,000.00 |
   | VAN BOXTEL | 250,000.00 |

   "All of the other offers of settlement are not acceptable. It is my understanding Mr. Alpert wishes releases executed in favor of the United States, Boeing and Pan American. It is my further understanding that neither the United States nor Boeing has authorized Mr. Alpert to negotiate on their behalf. Assum-

pert telephoned Cathcart's office and withdrew the offers, stating that the offers had not been accepted under the conditions proposed. A letter followed reiterating the withdrawal of the offers.

In a summary proceeding on December 18, 1978, the District Court granted Dibley's motion to enforce the settlement agreement. On February 5, 1979, the District Court denied Pan Am's Rule 60(b) motion.

## II. ISSUE

We find the dispositive issue to be the validity of Dibley's reply as an acceptance of Pan Am's offer.

## III. DISCUSSION

■ We find that the validity of the reply as an acceptance must be determined by California law. The parties stipulated to transfer these actions to the Central District of California for all purposes. Pan Am has argued that California law ought to apply. Appellees have not contested this issue. California law definitively states: An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, which will conclude the person accepting. A qualified acceptance is a new proposal." Cal.Civ. Code § 1585 (West). If the acceptance contains conditions not embraced in the offer or adds new terms, there is no meeting of the minds and no acceptance. *Landberg v. Landberg*, 24 Cal.App.3d 742, 752, 101 Cal. Rptr. 335, 342 (1st Dist. 1972); *American Aeronautics Corp. v. Grand Central Aircraft Co.*, 155 Cal.App.2d 69, 80, 317 P.2d 694, 701 (2d Dist.1957).

■ Here, Pan Am made its settlement offer contingent on eight written conditions as stated, only one of which is relevant here: "A complete release of all defendants including, but not limited to, Pan American, the Estates of the deceased crew members, The Boeing Company, the United States of America and their agents, servants and employees." Dibley's reply to Pan Am's offer and conditions stated:

"[U]nless Mr. Alpert can get Boeing and the United States to forego their cost bills, at least as to the settling parties, we have serious problems with these added conditions. My clients are willing that a release of all three parties be given as long as there is no further potential liability on their part for costs."

Dibley contends that the quoted language was merely an inquiry about the relationship between Dibley, Boeing, and the United States. Since Alpert had no authority to negotiate on behalf of Boeing or the United States, Dibley argues, the "complete release of all defendants" condition was meaningless. Pan Am, on the other hand, argues that it could condition its offer on any terms it chose. Since Dibley's reply did not accept the release condition, Pan Am contends, the letter was not a valid acceptance.

We do not find Dibley's inquiry theory persuasive. Pan Am's offer was contingent on Dibley's release of all the defendants. Pan Am did not need authority from Boeing and the United States to make this condition because Pan Am was not bargaining away anything on their behalf. In response, Dibley proposed a quid pro quo: He would release all defendants if Boeing and the United States agreed to forego the costs outstanding against him. This added a new term, rendering Dibley's response a qualified acceptance and a new proposal. Cal. Civ.Code § 1585 (West). Therefore, as a matter of law, the Dibley reply was not a valid acceptance.[3] *See Landberg*, 24 Cal. App.3d at 757–58, 101 Cal.Rptr. at 345–46.

---

ing that Judge Byrne follows the verdict of the advisory jury, there will be an outstanding cost bill of the United States and Boeing for which the settling parties would remain liable, thus, unless Mr. Alpert can get Boeing and the United States to forego their cost bills, at least as to the settling parties, we have serious problems with these added conditions. My clients are willing that a release of all three parties be given as long as there is no further potential liability on their part for costs. Accordingly, if you will forward to me appropriate releases, I will see that they are executed and, where necessary, seek Court approval of these settlements."

3. Dibley attempts to salvage the settlement by claiming that Alpert's written response of September 7 "validated" Dibley's reply as an ac-

Because we find no valid contract of settlement, we need not reach the other issues raised by this appeal.

The judgments of the District Court are vacated and the cause is remanded to the District Court for trial on the damage issues.

VACATED.

ceptance. Alpert's September 7th letter, however, reiterated the same conditions precedent to the consummation of any settlement. Thus, because Alpert continued to assert the necessity of all eight conditions in any agreement, we reject Dibley's validation theory.