Filed 1/13/14  Hakim v. Beshay CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SUZAN HAKIM, | B240527 |
| Plaintiff, Cross-Defendant and Appellant, | (Los Angeles County Super. Ct. No. BC419205) |
| v. | |
| MAGED BESHAY et al., | |
| Defendants, Cross-Complainants and Appellants. | |

APPEAL from judgments and an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed in part, reversed in part and remanded with directions.

James S. Link for Plaintiff, Cross-Defendant and Appellant.

Law Offices of Michael A. Brewer, Michael A. Brewer and Beverly J. Bickel for Defendants, Cross-Complainants and Appellants.

_____

## INTRODUCTION

Two pharmacists formed a corporation to operate a pharmacy together. Soon after the pharmacy opened, however, the two equal shareholders discussed having one shareholder pharmacist buy out the other for $60,000--the amount she had contributed to the corporation. The two also agreed their lawyer would draw up a written agreement for the transaction. Each proposed changes to which the other objected, and the agreement was never signed.

The buyer locked the seller out of the pharmacy and denied the seller access to all computer records, email and files, but also refused to pay her, relying on the absence of an executed buyout agreement. The seller pharmacist who claimed the two had reached an agreement for the buyer to pay her for her interest filed a complaint seeking to enforce the alleged oral contract. Through the buyer pharmacist, the corporation cross-complained against the seller for conversion of several Medi-Cal checks the seller pharmacist admitted she had held and later deposited to a separate account without the buyer's knowledge, after the buyer refused to pay her (and sought to repay the funds prior to trial). The corporation sought punitive damages from the seller.

In the first trial on the complaint, the jury agreed the parties had formed a contract which the buyer had breached and awarded the seller $60,000 plus attorney fees and costs. The trial court entered judgment and granted the seller's motion for attorney fees. After the trial court found no basis for presenting the question of punitive damages to the jury, in a subsequent trial on the cross-complaint, a second jury reached a verdict against the seller and in the corporation's favor.

The buyer appeals from the judgment and order for attorney fees, claiming (1) the judgment is not supported by substantial evidence, and the trial court committed prejudicial error (2) in awarding the seller her attorney fees on the complaint and (3) in ruling punitive damages could not be awarded on the corporation's cross-complaint. In her cross-appeal, the seller pharmacist says the trial court miscalculated the amount of interest she owed on the conversion claim. We reverse the judgment on the complaint for

breach of oral contract and remand the matter with directions for entry of a different judgment, reverse the order awarding the seller her attorney fees on the complaint and affirm the order finding as a matter of law the corporation had not established its entitlement to punitive damages on the cross-complaint. On the seller's appeal from the cross-complaint, challenging the interest calculation on her conceded appropriation and concealment of the corporation's Medi-Cal checks, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In 2010, Suzan Hakim filed her first amended complaint against Maged Beshay and MarioMina, Inc. for breach of oral contract, conversion, fraud, injunctive relief, declaratory relief and dissolution of the corporation. As of April 2009, Hakim alleged, she had spent money and time promoting MarioMina's pharmacy business and recruiting patients, but around that time, Beshay and his wife began to take over the business and spread rumors about Hakim; Beshay also failed to tell Hakim about documents received from governmental agencies as required under the corporation's bylaws.

On May 5, 2009, Hakim alleged, Beshay orally agreed to pay Hakim the sum of $60,000 to buy out her interest in the corporation but breached the agreement by failing to pay her any amount. Instead, Hakim said, Beshay held a corporate meeting without providing any notice to Hakim (one of MarioMina's two directors, 50 percent shareholder and the corporation's secretary) and voted unilaterally to remove Hakim from MarioMina and take over its operation in violation of the corporation's bylaws. Beshay then filed a fraudulent statement of information with the Secretary of State, removing and replacing Hakim and converting the corporation to his own use, and changed the locks on the corporation's doors.

In May 2011, Beshay and MarioMina filed a first amended cross-complaint against Hakim, alleging causes of action for breach of contract, conversion and breach of fiduciary duty. According to the operative cross-complaint, Beshay and Hakim (both pharmacists) formed a corporation in September 2008 for the purpose of purchasing and operating EO Pharmacy. They equally shared the cost of the purchase price ($38,500

3

each) and continued to equally fund the corporation from January through April 6, 2009, in the amount of $18,000 each. As of April 6, 2009, when Hakim and Beshay had each contributed $56,500 to the corporation, Hakim ceased her payments to support the pharmacy. From April 30 through May 5, 2009, Beshay made an additional $3,000 contribution to the corporation and accrued $2,902 in deferred salary.

In July 2009, without MarioMina's permission, Hakim fraudulently opened a bank account in the corporation's name with Bank of America, misrepresenting herself as the corporation's president. Hakim deposited stolen checks from Medi-Cal and private insurance companies into this account, including some attached as exhibits to the cross-complaint, and later withdrew the funds for her own purposes. A related police report Beshay filed was also attached as an exhibit.

Trial proceeded on the complaint alone. Hakim testified that she had more experience and expertise as a pharmacist, especially concerning necessary government and insurance documentation and record keeping, had more contacts and contributed more effort to opening the pharmacy. In addition, she had better English skills than Beshay. Hakim and Beshay had come to this country from Egypt and had been friends for years. Both attended the same Coptic Christian Orthodox church.

When Beshay's wife interfered in the business's operations and began to disparage Hakim, Hakim testified that she did not wish to ruin their friendship so the two met at a Starbucks on April 30, 2009. Hakim had proposed that one buy the other out and said Beshay offered that Beshay could choose which he would prefer to do. Beshay said he wanted to buy Hakim out for the amount they agreed she had contributed to date-- $60,000 (including payments for the corporation's legal fees paid to Herb Weinberg which Hakim had paid). Beshay spoke with their priest (Father Augustinos) and arranged a meeting to include Hakim. In front of their priest, Hakim and Beshay confirmed Beshay would pay Hakim $60,000 to buy out her interest in the business, and Beshay said he would contact Weinberg to prepare a written agreement.

4

Hakim testified she expected a simple piece of paper in exchange for a check, but also said she would not sign the writing if she did not agree to all of its terms and conditions and expected Beshay would not sign if he did not agree to all terms and conditions. Beshay sought to add various provisions regarding arbitration, confidentiality, indemnity and other issues that Hakim said concerned her, and she sought to add provisions regarding access to the corporate email account and password. The written agreement was never signed.

According to Beshay's testimony, a friend who was an engineer and experienced with contracts advised him regarding provisions to include. Although he had gone to the bank after his meeting with Hakim and obtained a $60,000 cashier's check, Beshay did not give it to Hakim. Perceiving the influence on Beshay of someone else (given that the language used in recent communications differed from Beshay's usual manner of speaking), Hakim said she became concerned. Hakim's concern was that Beshay was planning to do something against her when he locked her out of the business, denied her access to the corporation's email (which included some private information), told her not to come back to work and was going back and forth with changes she had not expected. She held on to the Medi-Cal checks that she received at her home as the corporation's secretary. She had intended to give them to Beshay when they signed the paper and she was given the check for her interest in a matter of days. When Beshay did not pay her and later tried to pay her a lower amount, she testified she decided to deposit the checks in the bank. Hakim said the bank officer had written in her title as president; she had not done so. Hakim said she accidentally used the corporate ATM card instead of the card she had meant to use for a small purchase at Target so when she realized what she had done, she cashed out the account and deposited the money in a safe deposit box to avoid repeating her mistake.

The jury entered a special verdict finding Beshay had breached his contract with Hakim indicating in writing that she was damaged in the amount of $60,000 plus attorney fees and costs. The trial court later granted Hakim's motion for attorney fees.

5

In a second trial on the cross-complaint, Hakim admitted her actions with respect to the corporation's checks and judgment was entered in the corporation's favor against Hakim although the trial court entered a directed verdict on the issue of punitive damages.

Beshay appeals and Hakim cross-appeals.

### DISCUSSION

**Beshay's Appeal.**

According to Beshay, the judgment on the complaint for breach of contract is not supported by substantial evidence. We agree.

Whether a contract is sufficiently definite to be enforceable is a question of law for the court. (*Ladas v. California State Auto Assn.* (1993) 19 Cal.App.4th 761, 770, fn. 2.) "The rule is well established and uniformly followed that when the respective parties orally agree upon all the terms and conditions of a contract with the mutual intention that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be thereafter prepared and signed does not alter the binding validity of the original contract. [Citations.] The question as to whether an oral agreement, including all the essential terms and conditions thereof, which according to the mutual understanding of the parties is to be subsequently reduced to writing, shall take effect forthwith as a completed contract *depends on the intention of the parties, to be determined by the surrounding facts and circumstances of a particular case*." (*Thompson v. Schurman* (1944) 65 Cal.App.2d 432, 440-441, further citation omitted.)

In this case, notwithstanding Hakim's testimony that the parties discussed a payment of $60,000 as the buyout price for her share of the business, Hakim's own testimony conceded the parties had agreed a written document would be drafted by an attorney with whom Hakim and Beshay had worked in forming the corporation (Weinberg). Hakim testified about the proposed changes Beshay requested to the initial written agreement which she rejected. Hakim also testified about the proposed changes she requested to which Beshay objected. Hakim also testified that she would not sign the

6

written agreement unless she agreed to all terms and conditions in the writing. Hakim testified further that she knew and expected Beshay would not sign it if he did not agree to all of the terms and conditions in the writing. Hakim acknowledged that no written agreement was ever signed. Consequently, given Hakim's admission that the negotiation of the parties did not yield a writing to which they both agreed, we find the determination that Hakim and Beshay had entered into an enforceable contract is not supported by substantial evidence. (*Thompson v. Schurman, supra,* 65 Cal.App.2d at pp. 40-41; and see *Landberg v. Landberg* (1972) 24 Cal.App.3d 742, 750 [qualified acceptance is a counter-offer, not a contract]; and *Howard v. Chow* (1938) 27 Cal.App.2d 755, 757-758 [where defendants executed an instrument but plaintiff added a new condition rather than unqualifiedly accepting the terms of that instrument, there was no acceptance by the plaintiff].) It also follows that Hakim was not entitled to attorney fees based on a writing to which the parties never agreed.[1] In the absence of such an agreement for attorney fees, the rule is that the parties are to pay their own fees. (Civ. Code, § 1717; and see *Copeland v. Baskin-Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1258 [where an "agreement to negotiate" is unsuccessful and an underlying substantive agreement is not enforceable, the court may not imply what the parties will agree upon].)

Accordingly, the breach of contract judgment entered in Hakim's favor and against Beshay as well as the order granting her attorney fees must be reversed.[2]

---

[1]    Indeed, she had alleged in her complaint Beshay had breached their *oral* contract and made no mention of attorney fees, let alone any basis for such an award.

[2]    Hakim claims she is somehow a minority shareholder despite the uncontroverted evidence of her equal 50 percent interest in the corporation. Hakim maintains she is entitled to entry of judgment as a matter of law against Beshay on her fraud cause of action. Hakim bases this claim on the $60,000 benefit-of-the-bargain amount she sought. Hakim asserts that if we were to agree with Beshay that judgment on the breach of contract cause of action is not supported by substantial evidence she is still entitled to recover on the fraud cause of action. We observe, however, that Hakim lost on her fraud claim at trial, and the authorities she cites do not support her contention that reversal as to the contract claim compels judgment in her favor for fraud.

7

Because we conclude Beshay was entitled to judgment as a matter of law on the breach of contract cause of action, we remand the matter to the trial court with directions to enter the proper judgment in favor of Beshay and against Hakim on the contract claim.[3]

However, in appealing on behalf of MarioMina on the issue of the corporation's entitlement to punitive damages on the cross-complaint, Beshay has failed to demonstrate prejudicial error in the trial court's entry of a directed verdict for failure to present clear and convincing evidence on which a jury could conclude that Hakim acted with malice, oppression or fraud toward the corporation in the context of this business dispute. (Civ. Code, § 3294; *Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156.)

**Hakim's Cross-Appeal.**

Hakim says the trial court erred in its calculation of interest due on the amount she concededly withheld from MarioMina. We disagree.

In its cross-complaint for conversion (and seeking punitive damages), MarioMina alleged Hakim had taken checks belonging to the corporation and placed the corresponding funds in her own safe deposit box. On June 30, 2011, on Hakim's behalf, a check in the amount of $20,052.76 was mailed to Beshay's counsel—two years after Hakim took the corporation's checks. Hakim admits the amount was $500 short of the amount awarded by the jury's verdict (and the check was not accepted), but says the only post-verdict interest that should have been awarded was interest calculated on the $500 not included in her tender pursuant to Civil Code section 1504 which provides: "An offer of payment or other performance duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof."

---

[3] Pursuant to Code of Civil Procedure section 43, we may "affirm, reverse, or modify any judgment or order appealed from, *and may direct the proper judgment or order to be entered*, or direct a new trial or other further proceedings to be had. . . ." (Italics added.)

On December 5, 2011, the jury concluded Hakim owed MarioMina $20,552.76 as MarioMina requested ($17,282.69 in damages plus $3270.07 in interest up to the time of the verdict (plus further interest to the time of judgment and $2,595.62 in costs)). Hakim admits that the amount she belatedly attempted to return was less than the amount the jury found she owed, and Civil Code section 1504 only stops the accrual of interest when the full amount of principal and interest due at the time of tender is offered. (*Western Lithograph Co. v. Vanomar Producers* (1923) 62 Cal.App. 644, 648; *Ansco Cons. Co. v. Ocean View Estates, Inc.* (1959) 169 Cal.App.2d 235, 239.) Hakim has failed to demonstrate error in this regard.

## *DISPOSITION*

The amended judgment in favor of Hakim and against Beshay for breach of contract is reversed, and the matter is remanded with directions to the trial court to enter judgment in favor of Beshay on the breach of contract claim. The order granting Hakim her attorney fees on the complaint for breach of oral contract is reversed. As stated in the jury's special verdict and incorporated into the amended judgment, Hakim failed to prove her fraud claim against Beshay. In this respect, the judgment is affirmed. The judgment against Hakim on MarioMina's cross-complaint for conversion is also affirmed. The parties are to bear their own costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                   **ZELON, J.**

9